ORIGINAL

**SEALED**
**BY ORDER OF THE COURT**

FLORENCE T. NAKAKUNI #2286
United States Attorney
District of Hawaii

SUSAN CUSHMAN
Assistant U.S. Attorney

THOMAS E. PEREZ
Assistant Attorney General
U.S. Department of Justice
Civil Rights Division

SUSAN FRENCH
Trial Attorney
Human Trafficking Prosecution Unit
KEVONNE SMALL
Trial Attorney
Criminal Section
Civil Rights Division
601 D Street, NW
Washington, D.C.  20530
Telephone:  (202) 514-3204

Attorneys for Plaintiff
UNITED STATES OF AMERICA



FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 01 2010

at____o'clock and____min.____M.
SUE BEITIA, CLERK

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CR 10-00576 SOM

| | |
|---|---|
| UNITED STATES OF AMERICA, | )  CR. NO. |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  INDICTMENT |
| | ) |
| MORDECHAI YOSEF ORIAN,     (01) | )  [18 U.S.C. §§ 2, 371, 1589, |
| aka "MOTTY," | )   1592, 1594] |
| PRANEE TUBCHUMPOL,     (02) | ) |
| aka "SOM," | ) |
| SHANE GERMANN,     (03) | ) |
| SAM WONGSESANIT,     (04) | ) |
| RATAWAN CHUNHARUTAI,     (05) | ) |
| PODJANEE SINCHAI,     (06) | ) |
| aka "POJANEE LOICHIRN," | ) |
| aka "PHODCHANEE," | ) |
| aka "JEH MAEW," | ) |
| | ) |
| Defendants. | ) |

## INDICTMENT

The Grand Jury charges that:

### COUNT 1

(Forced Labor Conspiracy)

### BACKGROUND

At all times material to this Indictment:

1.    Global Horizons Manpower, Incorporated (GLOBAL), is a California for-profit corporation, located at 11111 Santa Monica Blvd., Los Angeles, CA, 90025, owned and operated by President and/or Chief Executive Officer Defendant MORDECHAI ORIAN, an Israeli national.

2.    Global recruits workers from foreign countries under the U.S. Department of Labor H2A guest worker program to work in the United States agricultural industry.

3.    Defendant PRANEE TUBCHUMPOL was the Director of International Relations for GLOBAL, and was the liaison between GLOBAL, the H2A guest workers, and the Thai authorities.

4.    Defendant SHANE GERMANN was employed by GLOBAL both as an onsite manager at farms utilizing H2A guest workers supplied by GLOBAL, and as a regional supervisor for Hawaii farms. GERMANN was directly supervised by Defendants MORDECHAI ORIAN and PRANEE TUBCHUMPOL.

5.    Defendant SAM WONGSESANIT was employed by GLOBAL as an onsite field supervisor at various farms, including Maui

2

Pineapple Farm, Maui, Hawaii, and directly supervised by
Defendants MORDECHAI ORIAN, PRANEE TUBCHUMPOL and SHANE GERMANN.

        6.    A.A.C.O. International Recruitment Co., Ltd. (AACO) is
a Thai labor recruiting company that recruits Thai nationals to
work outside of Thailand, and RATAWAN CHUNHARUTAI represents
herself as both the owner and Managing Director of AACO.

        7.    PODJANEE SINCHAI is a Thai labor recruiter who operated
a licensed recruiting agency named Podjanee International Co.,
formerly named A Go International Co.

CONSPIRACY

        From in or about May 2004, and continuing through on or
about September 16, 2005, in the District of Hawaii and
elsewhere, defendants,

                MORDECHAI ORIAN,
                PRANEE TUBCHUMPOL,
                SHANE GERMANN,
                SAM WONGSESANIT,
                RATAWAN CHUNHARUTAI,
                PODJANEE SINCHAI,

and co-conspirators known and unknown to the Grand Jury, did
knowingly and willfully combine, confederate, conspire and agree
with one another and others known and unknown to the Grand Jury,
to hold approximately 400 Thai nationals in a condition of forced
labor and service by knowingly providing and obtaining the labor
or services of the Thai nationals by:

        (a)   any scheme, plan, or pattern intended to cause the
              person to believe that, if the person did not perform

3

such labor or services, that person or another person
would suffer serious harm or physical restraint; and

(b)   the abuse or threatened abuse of law or the legal
process.

### OBJECT OF CONSPIRACY

8.   The object of the conspiracy was to obtain cheap,
compliant labor performed by Thai H2A guest workers indebted by
the defendants' recruitment fees, and to compel the workers'
labor and service through threats to have the workers arrested,
deported, or sent back to Thailand, knowing the workers could not
pay off their debts if sent home, thus subjecting the workers to
serious economic harm including loss of their family property.

### MANNER AND MEANS

9.   It was part of the conspiracy that Defendants MORDECHAI
ORIAN, PRANEE TUBCHUMPOL, RATAWAN CHUNHARUTAI, PODJANEE SINCHAI
and co-conspirators known and unknown to the Grand Jury, entered
into a business venture to bring hundreds of impoverished, rural
farm workers from Thailand to the United States under the U.S.
Department of Labor seasonal and temporary H2A guest worker
program to work on farms throughout the United States, including
Hawaii farms located on the islands of Oahu, Maui, Hawaii and
Kauai.

10.   It was further part of the conspiracy that Defendants
PODJANEE SINCHAI, RATAWAN CHUNHARUTAI and PRANEE TUBCHUMPOL, and

co-conspirators known and unknown to the Grand Jury, personally recruited impoverished Thai nationals, whose annual income was approximately $1,000.00 USD, to work at farms in the United States by enticing the Thai nationals with false promises of high wages, and up to three years of employment.

11.  It was further part of the conspiracy that Defendants MORDECHAI ORIAN, PODJANEE SINCHAI, RATAWAN CHUNHARUTAI, PRANEE TUBCHUMPOL, and co-conspirators known and unknown to the Grand Jury, required that the Thai nationals pay substantial recruitment fees, ranging between $380,000 to $840,000 Thai baht (approximately $9,500 to $21,000 USD), to secure the U.S. jobs for each prospective worker.

12.  It was further part of the conspiracy that Defendants MORDECHAI ORIAN, PRANEE TUBCHUMPOL, SHANE GERMANN, SAM WONGSESANIT, PODJANEE SINCHAI and RATAWAN CHUNHARUTAI, knowing that the Thai nationals working at farms in the U.S. had incurred high debts to secure the U.S. jobs, directed or issued threats to send non-compliant workers back to Thailand knowing the Thai H2A guest workers would fact serious economic harm.

13.  It was further part of the conspiracy that the owners of GLOBAL and AACO each profited by receiving portions of the Thai nationals' recruitment fees.

14.   It was further part of the conspiracy that GLOBAL's
owner profited from commissions paid by the U.S. grower clients
for the Thai H2A guest workers' labor and service.

15.   It was further part of the conspiracy that Defendant
MORDECHAI ORIAN, signing for GLOBAL concealed this scheme by
routinely failing to reveal to the U.S. Department of Labor
Employment and Training Administration, in his Application for
Alien Employment Certification and the Agricultural and Food
Processing Clearance Orders, that the Thai H2A guest workers paid
substantial recruitment fees to procure the jobs in the United
States.

16.   It was further part of the conspiracy that Defendants
MORDECHAI ORIAN, PRANEE TUBCHUMPOL, and co-conspirators known and
unknown to the Grand Jury, directed Defendants SHANE GERMANN and
SAM WONGSESANIT, and other GLOBAL onsite field supervisors, to
confiscate the Thai H2A guest workers' passports and visas when
the workers arrived in the United States to restrict the workers'
movement and to prevent the Thai H2A guest workers from escaping.

17.   It was further part of the conspiracy that Defendants
MORDECHAI ORIAN, PRANEE TUBCHUMPOL, SHANE GERMANN, SAM
WONGSESANIT, and co-conspirators known and unknown to the Grand
Jury, compelled the labor and service of Thai H2A guest workers
by threatening to send the workers back to Thailand if the
workers complained about late wages, insufficient work hours, bad

6

housing and work conditions, confiscation of passports, and
failure to procure visa extensions, knowing that if the Thai H2A
guest workers were sent back to Thailand they would be unable to
repay their debts resulting in serious economic harm to them and
others.

OVERT ACTS

In furtherance of the conspiracy, and to accomplish the
objects of the conspiracy, at least one of the co-conspirators
committed or caused to be committed at least one of the following
overt acts, among others, in the District of Hawaii and
elsewhere:

Thai National K.A.

18.  From on or about May 2004, through on or about
September 12, 2005, Defendants MORDECHAI ORIAN, PRANEE
TUBCHUMPOL, SAM WONGSESANIT and SHANE GERMANN compelled K.A.'s
labor and services through confinement and threats of being sent
back to Thailand, where K.A. would face serious economic harm.

19.  In or about May 2004, or June 2004, in Thailand,
Defendant PODJANEE SINCHAI held a meeting with K.A. and a group
of Thai nationals who she had recruited, explained a job
opportunity on farms in the U.S., and stated that the job would
pay $8.72 per hour; overtime pay would be 1.5 times the hourly
rate; the employment contract would be for three years; the
recruitment fees would be between $400,000 to $700,000 Thai baht

(approximately $10,000 to $17,500 USD); that $300,000 Thai baht
(approximately ($7,500 USD) had to be paid up front; and the
balance could be paid in the United States.

20.   In or about June 2004, Defendant PODJANEE SINCHAI took
K.A. and approximately 11 Thai nationals to the Bangkok AACO
office to introduce them to Defendant RATAWAN CHUNHARUTAI who
informed the Thai nationals that they would earn $80,000 Thai
baht (approximately $2,000 USD) a month for 8 hours of work each
day and that they would receive overtime pay.

21.   In or about June 2004, Defendant RATAWAN CHUNHARUTAI
instructed K.A. and about 40 other Thai nationals, who had
already paid a portion of the recruitment fees, to lie to the
U.S. Embassy and state each paid AACO only $65,000 Thai baht
(approximately $1,625 USD) in recruitment fees.

22.   In or about June 2004, immediately after K.A. signed
his employment contract with GLOBAL, Defendant PODJANEE SINCHAI
told K.A. he owed AACO $300,000 Thai baht (approximately $7,500
USD) which K.A. paid by borrowing a portion of the money from
PODJANEE SINCHAI at 3 percent interest compounded monthly secured
by the deeds to his mother-in-law's land as collateral.

23.   In or about June 2004, Defendants RATAWAN CHUNHARUTAI
and PODJANEE SINCHAI instructed K.A. and other Thai nationals to
lie to the Thai Labor Ministry and not to reveal the amount of
recruitment fees K.A. had previously paid to AACO, or he and the

other Thai nationals would not be permitted to go to the United

States.

24. Between June 2004 and July 2004, Defendants RATAWAN

CHUNHARUTAI and PODJANEE SINCHAI, told K.A. and other Thai

nationals on several occasions not to try to escape or flee from

GLOBAL's client growers or housing once they entered the United

States.

25. On or about July 4, 2004, K.A. and approximately 52

Thai nationals entered the United States in Seattle, Washington,

and a GLOBAL employee, who is known to the Grand Jury, and who

was supervised by Defendant PRANEE TUBCHUMPOL, confiscated K.A.'s

and all of the 52 Thai nationals' passports stating it was on

company orders, and if K.A. kept his passport he would not work.

26. In or about July 2004, in Washington state, Defendant

PRANEE TUBCHUMPOL told K.A. and the other recently arrived Thai

H2A guest workers that GLOBAL had the workers' passports, that

they could not escape or flee because the police would arrest and

deport them, and if the police did not find them GLOBAL had

people who could find them and they would send them back to

Thailand.

27. Between in or about July 2004 and October 2004,

Defendant PRANEE TUBCHUMPOL told the workers on several occasions

the rules for working on the farms including:  do not talk to

other people from Thailand outside of the farm, do not leave the

housing location because without documents you will be arrested,
do not escape or flee because the police or GLOBAL will find,
arrest, deport, or send you back to Thailand.

28. On or about October 30, 2004, Defendant SAM WONGSESANIT
immediately confiscated the passports of K.A. and approximately
20 other Thai H2A guest workers on Defendant SHANE GERMANN's
orders.

Thai National B.K.

29. From on or about May 2004, through on or about
September 16, 2005, Defendants MORDECHAI ORIAN, PRANEE
TUBCHUMPOL, SAM WONGSESANIT and SHANE GERMANN compelled B.K.'s
labor and services through confinement and threats of being sent
back to Thailand, where B.K. would face serious economic harm.

30. In or about May 2004, Defendant PODJANEE SINCHAI
recruited B.K. in his home village to work in the United States
on farms for up to three years at high wages if he paid a
recruitment fee of $680,000 Thai baht ($17,000 USD) which would
be secured by B.K.'s family land.

31. In or about May 2004, Defendant PODJANEE SINCHAI and an
AACO representative, directed B.K. to sign documents that were
already filled out, advising there was not sufficient time for
him to first read the documents.

32. In or about June 2004, Defendant PRANEE TUBCHUMPOL in
Washington state confiscated B.K. and other Thai nationals'

passports, and required the Thai nationals to sign forms
generated by GLOBAL authorizing her to take possession of their
passports.

33. In or about October 2004, Defendant SAM WONGSESANIT
told B.K. and other Thai workers at Maui Pineapple Farm not to
cause problems or run away, or GLOBAL would send the workers back
to Thailand.

34. From in or about October 2004, through September 2005,
Defendant SAM WONGSESANIT conducted a nightly roll call to ensure
no workers had run away.

35. From in or about October 2004, through September 2005,
Defendant SAM WONGSESANIT told B.K., K.A. and B.P., and other
Thai H2A guest workers, not to socialize with outsiders, not to
complain, and that if anyone threatened him, he would shoot them
because he had a gun.

Thai National B.P.

36. From on or about May 2004, through on or about
September 5, 2005, Defendants MORDECHAI ORIAN, PRANEE TUBCHUMPOL,
SAM WONGSESANIT and SHANE GERMANN compelled B.P.'s labor and
services through confinement and threats of being sent back to
Thailand, where B.P. would face serious economic harm.

37. In or about June 2004, Defendant PODJANEE SINCHAI,
nicknamed "MAEW," recruited B.P. in his village to work in the
United States in agricultural work earning approximately $75,000

Thai baht ($1,875 USD) per month which included overtime; a one year contract that could be extended up to three years; and a recruitment commission would be $380,000 Thai baht ($9,500 USD)

38.  In or about June 2004, Defendant PODJANEE SINCHAI transported BP to AACO to sign documents:  B.P. could not read but signed the documents.

Maui Pineapple Farm Confinement:  August - September 2005

39.  In or about August 2005 and September 2005, B.P. worked at Maui Pineapple Farm when a meeting was held by Defendants PRANEE TUBCHUMPOL and RATAWAN CHUNHARUTAI and workers were informed that those who paid lower commission fees of approximately $380,000 Thai baht ($9,500 USD) would have to pay an additional $150,000 Thai baht ($3,750 USD) to stay an additional year.

40.  Between in or about July 2005 or August 2005, Defendant SAM WONGSESANIT handed out to 100 Thai H2A workers at Maui Pineapple Farm, copies of each Thai national's federal immigration Notice of Action document indicating that his visa was expiring September 15, 2005.

41.  In or about August 2005, Defendant SAM WONGSESANIT, interpreting for Defendant MORDECHAI ORIAN, told K.A. and approximately 20 other Thai H2A guest workers, not to escape or find jobs on their own, and that if they disobeyed this order they would be sent back to Thailand.

12

42.   In or about August 2005, Defendant PODJANEE SINCHAI
visited K.A.'s and other Thai guest workers' families and stated
that K.A. or his family had to pay an additional $150,000 ($3,750
USD) Thai baht if K.A. wanted to stay and work in the United
States for an additional year.

43.   On or about August 29, 2005, Defendant PRANEE
TUBCHUMPOL arrived in Hawaii with the Thai passports for the Maui
Pineapple Farm Thai H2A guest workers.

44.   On or about August 29, 2005, a GLOBAL employee, known
to the Grand Jury arrived in Maui, Hawaii, and organized five to
six male and female guards to prevent the Maui Pineapple Farm H2A
Thai guest workers from running away.

45.   In or about August 2005, Defendant MORDECHAI ORIAN told
Defendant SAM WONGSESANIT to order the Thai H2A guest workers not
to talk to U.S. Department of Labor investigators who were at
Maui Pineapple Farm, that any Thai worker who disobeyed this
order would not be allowed to work and would be sent back to
Thailand.

46.   On or about September 1, 2005, Defendants PRANEE
TUBCHUMPOL, RATAWAN CHUNHARUTAI, SHANE GERMANN and SAM
WONGSESANIT held a meeting at the Maui Pineapple Farm housing
area with approximately 70 to 100 Thai H2A guest workers whose
visas were expiring on September 15, 2005, where Defendant PRANEE

TUBCHUMPOL read a list of workers whom GLOBAL intended to send back to Thailand.

47.   On or about September 1, 2005, at the Maui Pineapple Farm meeting Defendants PRANEE TUBCHUMPOL and RATAWAN CHUNHARUTAI informed the workers who paid lower recruitment fees that they would be sent back to Thailand unless their families paid an additional $150,000 Thai baht ($3,750 USD) to the Thai recruiters who had recently contacted their families for the additional fees.

48.   Between on or about September 1, 2005, through September 14, 2005, Defendants SAM WONGSESANIT, SHANE GERMANN, and others known and unknown to the Grand Jury, worked as security guards, 24 hours a day, at the Maui Pineapple Farm housing to restrict the workers' movement, whether at the housing or at the farm, to prevent the workers from leaving.

49.   Between on or about September 1, 2005 and September 13, 2005, Defendants MORDECHAI ORIAN, PRANEE TUBCHUMPOL, and others known to the Grand Jury, personally ordered and directed the security detail at Maui Pineapple Farm, including hiring additional individuals to guard the property.

50.   Between on or about September 3, 2005 and September 13, 2005, Defendant MORDECHAI ORIAN contacted a person known to the Grand Jury and frantically urged him to travel to Maui Pineapple Farm to act as security.

14

51.   Between on or about September 1, 2005, and
September 13, 2005, Defendants SAM WONGSESANIT and SHANE GERMANN
strung yellow tape around the Maui Pineapple Farm housing and
installed bells on string lines in the woods to alert the guards
if a worker attempted to escape and to establish their control
over the Thai H2A guest workers who remained working for GLOBAL.

52.   On or about September 13, 2005, Defendant SAM
WONGSESANIT informed all the Thai H2A guest workers that those
who did not comply with GLOBAL's order to pay the additional
$150,000 Thai baht ($3,750 USD) would be sent back to Thailand
the next day.

53.   On or about September 14, 2005, a GLOBAL employee,
known to the Grand Jury, hired guards for airport duty to ensure
the Thai H2A guest workers boarded their flight back to Thailand.

54.   Between September 1, 2005 and September 14, 2005,
Defendants MORDEHCAI ORIAN and PRANEE TUBCHUMPOL, relocated K.A.,
B.K., and other Thai H2A guest workers who paid higher
recruitment fees, to other farms to work.

55.   On or about September 7, 2005, after Defendants
MORDECHAI ORIAN, PRANEE TUBCHUMPOL, SAM WONGSESANIT and SHANE
GERMANN threatened to send B.P., and other Thai H2A guest workers
who paid a lower recruitment fee, back to Thailand.  B.P. fearing
being sent back to Thailand, ran away because he could not pay

the additional $150,000 Thai baht ($3,750 USD), and because he had outstanding recruitment debts in Thailand.

56.   On or about September 14,2005, Defendant PRANEE TUBCHUMPOL escorted 41 Thai H2A guest workers back to Thailand on Japan Airlines flight #71.

All in violation of Title 18, United States Code, Sections 371 and 1589.

## COUNT 2

(Document Servitude Conspiracy)

The allegations contained in paragraphs 1 through 56 of this Indictment are incorporated herein and by reference.

From on or about July 5, 2004, and continuing through on or about September 30, 2005, in the District of Hawaii and elsewhere, defendants,

> MORDECHAI ORIAN,
> PRANEE TUBCHUMPOL,
> SHANE GERMANN,
> SAM WONGSESANIT,

and others known and unknown to the Grand Jury, did knowingly and willfully combine, confederate, conspire and agree with one another to hold Thai nationals in a condition of document servitude by knowingly destroying, concealing, removing, confiscating, or possessing any actual or purported passport or other immigration document, or any other actual purported government identification document of another person:

(a)   in the course of a violation of 18 U.S.C. § 1589;

16

(b)   with intent to violate 18 U.S.C. § 1589; and

(c)   to prevent or restrict or attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons.

All in violation of Title 18, United States Code, Sections 371 and 1592.

COUNT 3

The Grand Jury further charges:

Beginning on or about September 1, 2005, and continuing through in or about September 15, 2005, all dates being approximate and inclusive, in the District of Hawaii, and elsewhere, defendants,

> MORDECHAI ORIAN,
> PRANEE TUBCHUMPOL, and
> RATAWAN CHUNHARUTAI,

aiding and abetting each other, attempted to and did knowingly provide and obtain the labor and services of a Thai national, "K.A.," whose identity is known to the Grand Jury, by threats of serious harm to "K.A." and by means of a scheme, plan and pattern intended to cause "K.A." to believe that if he did not perform such labor and services, he would suffer serious harm, and by

17

means of the abuse and threatened abuse of law and the legal process.

All in violation of Title 18, United States Code, Sections 1589, 1594, and 2.

## COUNT 4

The Grand Jury further charges:

Beginning on or about September 1, 2005, and continuing through on or about September 15, 2005 all dates being approximate and inclusive, in the District of Hawaii, and elsewhere, defendants,

MORDECHAI ORIAN,
PRANEE TUBCHUMPOL, and
RATAWAN CHUNHARUTAI,

aiding and abetting each other, attempted to and did knowingly provide and obtain the labor and services of a Thai national, "B.P.," whose identity is known to the Grand Jury, by threats of serious harm to "B.P." and by means of a scheme, plan and pattern intended to cause "B.P." to believe that if he did not perform such labor and services, he would suffer serious harm, and by means of the abuse and threatened abuse of law and the legal process.

All in violation of Title 18, United States Code, Sections 1589, 1594, and 2.

//

//

18

<u>COUNT 5</u>

The Grand Jury further charges:

Beginning on or about September 1, 2005, and continuing through on or about September 15, 2005 all dates being approximate and inclusive, in the District of Hawaii, and elsewhere, defendants,

MORDECHAI ORIAN,
PRANEE TUBCHUMPOL, and
RATAWAN CHUNHARUTAI

aiding and abetting each other, attempted to and did knowingly provide and obtain the labor and services of a Thai national, "B.K.," whose identity is known to the Grand Jury, by threats of serious harm to "B.K." and by means of a scheme, plan and pattern intended to cause "B.K." to believe that if he did not perform such labor and services, he would suffer serious harm, and by means of the abuse and threatened abuse of law and the legal process.

//

//

//

//

//

//

//

//

All in violation of Title 18, United States Code, Sections 1589, 1594, and 2.

DATED:   September 1, 2010, at Honolulu, Hawaii.

A TRUE BILL

/s/Foreperson
_____
FOREPERSON, GRAND JURY

FLORENCE T. NAKAKUNI
United States Attorney
District of Hawaii

_____
SUSAN CUSHMAN
Assistant U.S. Attorney

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

_____
SUSAN FRENCH
Trial Attorney
Human Trafficking Prosecution Unit

_____
KEVONNE SMALL
Trial Attorney
Criminal Section
Civil Rights Division