ORIGINAL

FLORENCE T. NAKAKUNI #2286
United States Attorney
District of Hawaii

SUSAN CUSHMAN
Assistant U.S. Attorney

THOMAS E. PEREZ
Assistant Attorney General
U.S. Department of Justice
Civil Rights Division

SUSAN FRENCH
KEVONNE SMALL
Trial Attorneys
Human Trafficking Prosecution Unit
Criminal Section, Civil Rights Division
601 D Street, NW
Washington, D.C. 20530
Telephone: (202) 514-3204

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 12 2011

at 1 o'clock and 20 min. P M.
SUE BEITIA, CLERK

SEALED
BY ORDER OF THE COURT

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MORDECHAI YOSEF ORIAN, (01)<br>aka "MOTTY,"<br>PRANEE TUBCHUMPOL, (02)<br>aka "SOM,"<br>SHANE GERMANN, (03)<br>SAM WONGSESANIT, (04)<br>RATAWAN CHUNHARUTAI, (05)<br>PODJANEE SINCHAI, (06)<br>aka "POJANEE LOICHIRN,"<br>aka "PHODCHANEE,"<br>aka "JEH MAEW,"<br>BRUCE SCHWARTZ, (07)<br>JOSEPH KNOLLER (08)<br><br>Defendants. | ) | CR. NO. 10-00576 SOM<br><br>FIRST SUPERSEDING INDICTMENT<br><br>[18 U.S.C. §§ 2, 371, 1589, 1592, 1594; 8 U.S.C. §§ 1324(a)(1)(A)(ii) and(iii), and(a)(1)(B)(i)] |

**INDICTMENT**

The Grand Jury charges that:

COUNT 1

(Forced Labor Conspiracy)

BACKGROUND

At all times material to this First Superseding Indictment (Indictment):

1. Global Horizons, Incorporated (GLOBAL) (formerly Global Horizons Manpower, Inc.), a California for-profit corporation was located at 11111 Santa Monica Blvd., Los Angeles, CA, 90025, during most of the charged conspiracy period. GLOBAL is owned and operated by President and/or Chief Executive Officer Defendant MORDECHAI ORIAN, an Israeli national. GLOBAL is known to do business as AGRILABOR, and AGRILABOR also is referred to as a Division of GLOBAL.

2. GLOBAL recruits foreign nationals under the U.S. Department of Labor H2A guest worker program to work as agricultural laborers throughout the United States, including farms in Hawaii.

3. Defendant PRANEE TUBCHUMPOL was employed by GLOBAL as the Director of International Relations and was the liaison between GLOBAL, the H2A guest workers, and the Thai recruiting companies and authorities.

4. Defendant BRUCE SCHWARTZ was employed by GLOBAL as the Operations Manager and also as an onsite supervisor for farms utilizing GLOBAL's H2A guest workers.

5. Defendant JOSEPH KNOLLER was employed by GLOBAL as the Vice-President of Operations and as a consultant.

6. Defendant SHANE GERMANN was employed by GLOBAL both as an onsite manager at farms utilizing H2A guest workers supplied by GLOBAL, and as a regional supervisor for Hawaii farms. GERMANN was directly supervised by Defendants MORDECHAI ORIAN, PRANEE TUBCHUMPOL, BRUCE SCHWARTZ and JOSEPH KNOLLER.

7. Defendant SAM WONGSESANIT was employed by GLOBAL as an onsite field supervisor at various farms, including Maui Pineapple Farm, Maui, Hawaii, and directly supervised by Defendants MORDECHAI ORIAN, PRANEE TUBCHUMPOL, BRUCE SCHWARTZ, JOSEPH KNOLLER and SHANE GERMANN.

8. A.A.C.O. International Recruitment Co., Ltd. (AACO) is a Thai labor recruiting company that recruits Thai nationals to work outside of Thailand, and RATAWAN CHUNHARUTAI represents herself as both the owner and Managing Director of AACO.

9. PODJANEE SINCHAI is a Thai labor recruiter who operated a licensed recruiting agency named Podjanee International Co., formerly named A Go International Co.

CONSPIRACY

From in or about 2001, and continuing through in or about August 2007, in the District of Hawaii and elsewhere, defendants,

MORDECHAI ORIAN,
PRANEE TUBCHUMPOL,
SHANE GERMANN,
SAM WONGSESANIT,
RATAWAN CHUNHARUTAI,
PODJANEE SINCHAI,
BRUCE SCHWARTZ,
JOSEPH KNOLLER,

and co-conspirators known and unknown to the Grand Jury, did knowingly and willfully combine, confederate, conspire and agree with one another and others known and unknown to the Grand Jury, to hold approximately 600 Thai nationals in a condition of forced labor and service by knowingly providing and obtaining the labor or services of the Thai nationals by means of:

(a) any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm [or physical restraint]; and

(b) the abuse or threatened abuse of law or the legal process.

OBJECT OF CONSPIRACY

10. The object of the conspiracy was to obtain and maintain a cheap, compliant, readily-available source of agricultural labor by recruiting Thai nationals; charging recruitment fees

that required the workers to incur substantial debts, and then compelling the workers' continued labor and service through threats of arrest, deportation, and repatriation, debts, to exploit the workers' fears that serious harm, including homelessness and loss of family land, would befall them and their families as a result of the debts if they failed to remain in the defendants' service.

MANNER AND MEANS

11. It was part of the conspiracy that Defendants MORDECHAI ORIAN, PRANEE TUBCHUMPOL, BRUCE SCHWARTZ, JOSEPH KNOLLER, RATAWAN CHUNHARUTAI, PODJANEE SINCHAI, and co-conspirators known and unknown to the Grand Jury, entered into a business venture to bring hundreds of impoverished, rural farm workers from Thailand to the United States under the U.S. Department of Labor H2A seasonal and temporary H2A guest worker program ("H2A program") to work on farms throughout the United States, including Hawaii farms located on the islands of Oahu, Maui, Hawaii, and Kauai in the District of Hawaii.

12. It was further part of the conspiracy that Defendants PODJANEE SINCHAI, RATAWAN CHUNHARUTAI, PRANEE TUBCHUMPOL, BRUCE SCHWARTZ, and co-conspirators known and unknown to the Grand Jury, recruited impoverished Thai nationals, whose annual family income was approximately $1,000.00 USD, to work at farms in the

United States by enticing the Thai nationals with false promises of high wages, and up to three years of steady employment.

13. It was further part of the conspiracy that Defendants MORDECHAI ORIAN, PRANEE TUBCHUMPOL, BRUCE SCHWARTZ, PODJANEE SINCHAI, RATAWAN CHUNHARUTAI, and co-conspirators known and unknown to the Grand Jury, required that the Thai nationals pay substantial recruitment fees, ranging between $380,000 to $1,060,000 Thai baht (approximately $9,500 to $26,500 USD), to secure the U.S. jobs, knowing that the recruited Thai nationals were impoverished and would have to borrow the money using their family land as collateral to secure the substantial debt.

14. It was further part of the conspiracy that Defendants MORDECHAI ORIAN, PRANEE TUBCHUMPOL, SHANE GERMANN, SAM WONGSESANIT, RATAWAN CHUNHARUTAI, BRUCE SCHWARTZ, JOSEPH KNOLLER, and co-conspirators known and unknown to the Grand Jury, knowing that the Thai H2A guest workers had incurred high debts to secure the U.S. jobs, directed or made threats to send the workers back to Thailand, knowing the workers and their families had no means of repaying the debts, and would face serious economic harm as a direct result of the debts incurred as a result of the defendants' recruitment scheme and the false promises of steady, long-term employment at high wages.

15. It was further part of the conspiracy that the owners of GLOBAL and AACO, and co-conspirators known and unknown to the

Grand Jury, each profited by receiving portions of the Thai workers' recruitment fees.

16. It was further part of the conspiracy that Defendant MORDECHAI ORIAN profited from commissions paid by the U.S. grower clients for the Thai workers' labor and service.

17. It was further part of the conspiracy that Defendant MORDECHAI ORIAN, signing for GLOBAL, concealed this scheme by routinely failing to reveal to the U.S. Department of Labor Employment and Training Administration, in his Application for Alien Employment Certification (Form 750) and the Agricultural and Food Processing Clearance Orders (Form 790) that the Thai workers paid substantial recruitment fees to procure the jobs in the United States and that these fees included charges for the workers' airfare to the United States and other recruitment expenses.

18. It was further part of the conspiracy that Defendants MORDECHAI ORIAN, PRANEE TUBCHUMPOL, SHANE GERMANN, SAM WONGSESANIT, BRUCE SCHWARTZ, and co-conspirators known and unknown to the Grand Jury, personally confiscated and directed other GLOBAL onsite field supervisors to confiscate Thai H2A guest workers' passports and visas upon arrival in the United States in Hawaii and elsewhere, and at various airports throughout the United States where the Thai H2A guest workers were transported to work, to restrict the Thai H2A guest workers.

19. It was further part of the conspiracy that Defendants MORDECHAI ORIAN, PRANEE TUBCHUMPOL, SHANE GERMANN, SAM WONGSESANIT, RATAWAN CHUNHARUTAI, BRUCE SCHWARTZ, JOSEPH KNOLLER, and co-conspirators known and unknown to the Grand Jury, compelled the labor and service of Thai H2A guest workers by threatening to send the workers back to Thailand when the workers complained about late or shorted wages, insufficient work hours, poor housing and work conditions, confiscation of passports, and failure to procure promised visa extensions, knowing that these threats caused the Thai H2A guest workers to believe that, if they were sent back to Thailand, they and their families would suffer serious harm, including the risk of destitution, shame, and loss of family homes and subsistence lands, as a result of debts incurred to pay the recruitment fees charged by the Defendants.

OVERT ACTS

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, at least one of the co-conspirators committed or caused to be committed at least one of the following overt acts, among others, in the District of Hawaii and elsewhere:

**GLOBAL Recruitment of Grower Clients: 2001-2002**

20. In or about 2001 or 2002, Defendant MORDECHAI ORIAN recruited grower clients at conferences in Las Cruces, New Mexico

and Wilcox, Arizona, offering to supply foreign agricultural workers to these agricultural growers for two years of employment.

21. In or about late 2002, Defendant MORDECHAI ORIAN directed GLOBAL employees to create and send out postcards nationwide to U.S. growers, promoting GLOBAL as a supplier of agricultural labor prepared to to handle related recruitment, visas, housing, transportation, payroll, management, and logistics associated with providing agricultural labors to U.S. growers.

**GLOBAL Petition To Procure Thai Workers for Arizona Chili Pepper Growers: 2002-2003**

22. On or about July 26, 2002, Defendant MORDECHAI ORIAN secured an agreement with Red Creek Farm in Elfrida, Arizona, to supply 100 agricultural workers to harvest chili peppers for two months between in or about December 2002 through January 2003.

23. On or about July 23, 2002, Defendant MORDECHAI ORIAN, signing as President, Global Horizons Manpower, Inc., submitted to the U.S. Department of Labor Employment and Labor Administration an Application for Alien Employment Certification (Form 750) seeking certification for 375 chili pepper harvesters (H2A guest workers), for the period of September 9, 2002 through March 31, 2003, $7.14 an hour to work 40 hours a week, for GLOBAL clients in Cochise and Pinale counties, Arizona, and representing GLOBAL had growers committed to employing the agricultural

workers, and certifying that the wages were not based on commissions, bonuses, or other incentives, while knowing that the grower clients did not have sufficient work to steadily employ 375 chili pepper harvesters for the stated employment time period.

24. On or about August 26, 2002, Defendant MORDECHAI ORIAN submitted to the U.S. Department of Justice Immigration and Naturalization Service a Petition for Nonimmigrant Worker (Form I-129), for 275 unnamed workers to be employed as chili pepper harvesters in Pinale and Cochise counties, Arizona, at unidentified farms, beginning September 9, 2002, and continuing through March 31, 2003.

25. In or about November 2002, Defendant MORDECHAI ORIAN notified the U.S. Embassy in Bangkok, Thailand, that he intended to fill 100 H2A certified positions to harvest chili peppers in Arizona with Thai nationals.

<u>Thai Nationals AH, YP, SS and ND</u>

26. In or about late 2002, representatives of Thai labor recruitment companies, along with a GLOBAL representative, all of whose identities are known to the Grand Jury, recruited Thai national AH, whose identity also is known to the Grand Jury, and other Thai nationals, to harvest chili peppers in Arizona.

27. In or about late 2002, representatives from Thai labor recruitment companies required AH to pay recruitment fees of

$750,000 Thai baht (approximately $18,750 USD) to secure the U.S. agricultural job; required him to provide title to parcels of family land as collateral for a loan the Thai recruiters arranged so that AH could pay his recruitment fee; and directed AH to lie to the Thai Department of Labor and the U.S. Embassy and state that he only paid $65,000 Thai baht in recruitment fees.

28. In or about late 2002, Thai labor recruitment companies, whose identities are known to the Grand Jury, recruited Thai national YP, whose identity also is known to the grand jury, to work in the United States as a farm worker promising that he would earn $80,000 Thai baht per month (approximately $2,000 USD) for three years.

29. In or about late 2002, representatives from Thai labor recruitment companies required YP to pay recruitment fees of $800,000 Thai baht (approximately $20,0000 USD) to secure the U.S. agricultural job; required that his wife and parents sign a document obligating them to pay a one-million Thai baht fine if AH ran away from GLOBAL's employment in the United States; and directed AH to lie to the Thai Department of Labor and the U.S. Embassy and state that he only paid $65,000 Thai baht in recruitment fees.

30. In or about December 2002, Thai national SS, whose identity is known to the Grand Jury, received a letter from Defendant MORDECHAI ORIAN dated December 23, 2002, that stated SS

had been selected as a chili pepper harvester at Red Creek Farm in Elfrida, Arizona, to work a minimum of eight hours a day, five days a week at $7.12 an hour; that housing and transportation would be provided; and that enclosed his employment contract providing for three years of full-time employment.

31. In or about August 2002, Thai national ND, whose identity is known to the Grand Jury, was recruited by Thai labor recruiters, whose identities are known to the Grand Jury, to work on farms in the United States.

32. In or about August 2002, ND paid a Thai labor recruitment company a recruitment fee of $650,000 Thai baht (approximately $16,500 USD) by borrowing money secured by family land as collateral. The recruiters told ND and other Thai nationals to lie to the Thai Department of Labor and say they had each paid $65,000 not $650,000 Thai baht in recruitment fees.

33. In or about February 2003, AH arrived in Los Angeles, California, and a GLOBAL representative, whose identity is known to the Grand Jury, met AH and approximately 10 other Thai H2A guest workers at the airport and transported them to a motel in Los Angeles where they, and approximately 40-50 other Thai H2A guest workers, had to remain in overcrowded conditions, without pay, for about two weeks until GLOBAL deployed the workers to agricultural jobs: AH never was sent to Arizona to pick chili peppers as promised.

34. In or about February 13, 2003, ND, YP, and approximately 31 other Thai nationals traveled from Bangkok, Thailand, to Los Angeles, California where a GLOBAL onsite supervisor, whose identity is known to the Grand Jury, met the group and immediately confiscated all of the Thai H2A guest workers' passports.

35. In or about February 2003, through March 2003, ND, AH, and their group of approximately 31 Thai H2A guest workers, were constantly escorted and monitored by the same GLOBAL supervisor referenced in paragraph 34, who frequently threatened to send ND, YP, and the other Thai H2A guest workers home if they tried to escape.

**Arizona Chili Pepper Harvesters Sent to ALOUN Farms in Hawaii**

36. In or about March 2003, GLOBAL sent AH, ND, and one group of the Thai H2A guest workers to work at ALOUN Farms, on the island of Oahu, Hawaii, in the District of Hawaii, escorted by Thai labor company recruiters, who had assisted GLOBAL in recruiting workers in Thailand.

37. In or about March 2003, in the District of Hawaii, Defendant MORDECHAI ORIAN and representatives from two Thai labor recruitment companies who had assisted in recruiting AH, met at ALOUN Farms, where one of the Thai recruiters, whose identity is known to the Grand Jury, confiscated AH's and other Thai H2A

guest workers' passports, in Defendant MORDECHAI ORIAN's presence.

38. In or about April 2003, AH complained to an ALOUN Farm representative about insufficient pay for his agricultural labor performed at ALOUN Farm, and the representative responded that ALOUN Farm could not afford to pay AH more.

39. In or about March 2003, continuing through early May 2003, the Defendants and their onsite supervisors, whose identities are known to the grand jury, compelled AH's, ND's, and other Thai H2A guest workers' labor and services at ALOUN Farms, in the District of Hawaii, through confiscation of their passports, threats of physical harm, and threats of serious harm to the Thai H2A guest workers and their families in Thailand.

40. In or about March 2003, when ND arrived in Hawaii, a GLOBAL onsite supervisor, whose identity is known to the Grand Jury, confiscated the passports of ND and the 31 other Thai H2A guest workers.

41. In or about March 2003, and continuing through April 2003, when ND asked an ALOUN Farm representative for his passport back, the ALOUN representative told ND that GLOBAL had ND's passport: ND asked several times to have his passport returned but his requests were ignored.

42. In or about March 2003, and continuing through April 2003, YP and other Thai H2A guest workers were housed at ALOUN

Farms in shipping containers with no carpet, beds, furniture, indoor plumbing, kitchen, or air conditioning.

43. In or about March 2003, and continuing through April 2003, a GLOBAL supervisor, whose identity is known to the Grand Jury, hit and threatened to hit ND with a stick, and further threatened to hit the other Thai H2A guest workers to make them work faster in the fields.

44. In or about March 2003, and continuing through April 2003, the same GLOBAL supervisor, repeatedly told the Thai H2A guest workers not to leave and that if they did leave they could be captured, arrested, and sent back to Thailand.

45. In or about March 2003, and continuing through April 2003, the same GLOBAL supervisor, told the Thai H2A guest workers that if they left the property they would be beaten up in the neighborhood.

**<u>GLOBAL's Scheme to Maintain Its Agricultural Labor Pools</u>**

46. On or about May 3, 2003, a GLOBAL representative, whose identity is known to the grand jury, transported AH and other Thai H2A guest workers to be fingerprinted by law enforcement on the island of Oahu, in the District of Hawaii, to facilitate sending AH back to Thailand, after which AH was detained for several days.

47. On or about May 8, 2003, Defendant MORDECHAI ORIAN sent ND, AH, YP, and approximately 40 other Thai H2A guest workers

back to Thailand, only three months after they arrived in the United States, contrary to their contracts for three years of full time employment in the United States, knowing the workers had incurred huge debts in Thailand to procure the U.S. jobs, causing the Thai H2A guest workers to fear that they and their families would face serious economic harm being sent back to Thailand.

48. On or about May 8, 2003, GLOBAL agents in Thailand, confiscated YP and the other returning Thai H2A guest workers' passports and YP's passport was not returned until on or about October 15, 2003, when GLOBAL sent YP back to the United States to work.

49. On or about May 8, 2003, Thai national SS, whose identity is known to the Grand Jury, was sent back to Thailand by GLOBAL.

**Del Monte Thai H2A Guest Workers Sent Back To Thailand**

50. In or about March 2003, Thai national KP, whose identity is known to the grand jury, entered the United States as a GLOBAL H2A guest worker, having been recruited in Thailand by Defendants BRUCE SCHWARTZ and PRANEE TUBCHUMPOL, with Defendant BRUCE SCHWARTZ promising three years of full-time employment at $8.25 an hour.

51. In or about March 2003, a GLOBAL employee, whose identity is known to the grand jury, confiscated KP's passport when he landed in Los Angeles, California.

52. In or about March 2003, the morning after KP arrived, GLOBAL sent KP to work at Del Monte Farm, in the District of Hawaii, where KP and other Thai H2A guest workers were supervised by a GLOBAL onsite supervisor, whose identity is known to the Grand Jury, and who instructed KP and the other Thai H2A guest workers not to make loud noises or go outside and not to interact with other workers; and that if KP or the other Thai H2A guest workers violated the rules, they would be sent back to Thailand.

53. In or about March 2003, for approximately 15 days, GLOBAL provided KP to perform agricultural labor harvesting pineapples at Del Monte Farm, and was never paid by GLOBAL.

54. In or about April 2003, or May 2003, while KP was performing agricultural labor at Del Monte Farm in the District of Hawaii at the direction of GLOBAL, KP and the other Thai H2A guest workers were taken into custody by immigration agents for several days, during which time a GLOBAL representative arrived and instructed the workers to agree to be returned to Thailand as a "voluntary departure."

//

//

//

**Mississippi: 2003 - 2004**

Thai Nationals YP and ND

55. In or about October 15, 2003, GLOBAL sent Thai H2A guest worker YP, whose identify is known to the grand jury and whom GLOBAL had sent back to Thailand for five months without employment or pay, back to the United States to perform agricultural labor for a grower client of GLOBAL in Mississippi.

56. In or about December 2003, GLOBAL sent ND and approximately 14 members of his original group of 32 Thai agricultural workers (whom GLOBAL had sent back to Thailand on or about May 8, 2003), back to the United States to work at Eubanks Farm, in Lucedale, Mississippi to perform agricultural labor at this grower client of GLOBAL, and in providing the labor and services of these workers to Eubanks Farm, GLOBAL housed the workers in rooms secured by padlocks which locked from the outside.

57. In or about December 2003, through August 2004, in Mississippi, a GLOBAL supervisor, whose identity is known to the Grand Jury, told ND and other Thai H2A guest workers that if they left GLOBAL they would be killed and that he, the GLOBAL supervisor, had many friends who could kill the workers.

58. In or about December 2003, through August 2004, in Mississippi, the same GLOBAL supervisor used a stick to prod the

H2A guest workers in the back of their necks to make them work faster.

59. In or about December 2003, and continuing through August 2004, in Mississippi, the same GLOBAL supervisor, told the H2A guest workers not to leave the work site or they would be captured and arrested.

60. Between in or about December 2003, and continuing through March 2004, ND worked each day, performing agricultural labor for GLOBAL's grower clients seven days a week, for which the growers paid GLOBAL, and during non-work hours was not allowed to leave the housing premises unescorted.

**Taft Vegetable Farms Fraudulent Petition To Maintain Agricultural Labor Supply: 2003**

61. On or about April 30, 2003, Defendant BRUCE SCHWARTZ, signing as Labor Transaction Coordinator for Taft Farms, located in Bakersfield, California, wrote an unauthorized letter on stolen Taft Vegetable Farms letterhead to Defendant MORDECHAI ORIAN, President, Global Horizons Manpower, Inc. falsely representing that Taft Farms had contracted with Global Horizons Manpower, Inc. to provide up to 250 workers to harvest crops from August 2003, through April 2004.

62. On or about July 1, 2003, Defendant MORDECHAI ORIAN, signing as President, Global Horizons Manpower, Inc., sent a six-page letter to Martin Rios, Certifying Officer, Employment and Training Administration, U.S. Department of Labor, responding to

the Department's declination of his application for certification of foreign workers, citing the fraudulent agreement with Taft Vegetable Farms and referring Mr. Rios to Defendant BRUCE SCHWARTZ to confirm GLOBAL's asserted contractual relationship with Taft Vegetable Farms.

63. On or about July 25, 2003, Defendant MORDECHAI ORIAN submitted a Form 750, "Application for Alien Employment Certification" to the U.S. Department of Labor, Employment and Training Administration, for agricultural workers beginning August 8, 2003, through April 30, 2004, in Bakersfield, California, citing the fraudulent letter of intent on Taft Vegetable Farms' stolen letter-head, and falsely asserting that the job positions existed.

64. On or about October 27, 2003, Defendant MORDECHAI ORIAN, signing as President, Global Horizons Manpower, Inc., sent a letter to the U.S. Department of Homeland Security, Bureau of Citizenship and Immigration Services, seeking expedited approval for two I-129 petitions for non-immigrant workers to be employed in Bakersfield, California, asserting that he had a client who requested Thai nationals fill the remaining positions to harvest from approximately November 10, 2003, through April 30, 2004, knowing that chili pepper harvesting would be over by the end of January 2003, and no workers were needed February through April

2003, so that GLOBAL could divert the H2A guest workers to provide their labor and services to other, unapproved farms.

65. On or about December 27, 2006, Defendant BRUCE SCHWARTZ in an affidavit, made under penalty of perjury, in support of Global Horizons, Inc., Global Horizons Manpower, Inc., and Defendant MORDECHAI ORIAN's opposition to GLOBAL's debarment action initiated by the U.S. Department of Labor Employment and Training Administration, falsely stated that Taft Vegetable Farms' owner had authorized him, Defendant BRUCE SCHWARTZ, to write the April 30, 2003, Letter of Intent to GLOBAL to supply 250 agricultural workers for nine specified months.

**Washington State: 2004**

Thai Nationals RS, AK, KA, BK, and PW

66. In or about early 2004, Thai national AK, whose identity is known to the grand jury, was recruited by Thai labor company recruiters to pick apples in Washington state, and was promised earnings of $60,000 Thai baht (approximately $1,500 USD) per month for one year with an extension option of up to 30 months.

67. In or about early 2004, the Thai labor recruiters referred AK to a specific Thai bank, the identity of which is known to the Grand Jury, to obtain a loan to pay the recruitment fees using family land as collateral.

68. In or about early 2004, at the AACO office in Bangkok, Thailand, Defendants PRANEE TUBCHUMPOL and BRUCE SCHWARTZ interviewed AK and approximately 12 other Thai nationals, with Defendant PRANEE TUBCHUMPOL translating for Defendant BRUCE SCHWARTZ as Defendant BRUCE SCHWARTZ asked AK if he could handle hard work and inspected AK's hands and body.

69. In or about early 2004, at the meeting at the AACO office described above, Defendant BRUCE SCHWARTZ told AK and the Thai nationals, through Defendant PRANEE TUBCHUMPOL as translator, that the Thai nationals who paid the most recruitment fees to work in the United States would be allowed to stay the longest

70. In or about 2004, Thai national RS, whose identity is known to the Grand Jury, was recruited by Thai labor recruitment companies, acting in concert with GLOBAL representatives Defendants PRANEE TUBCHUMPOL and BRUCE SCHWARTZ, who traveled to Thailand to interview RS and other Thai nationals for agricultural jobs in the United States.

71. In or about 2004, the Thai labor recruiter advised RS he would earn between $50,000 to $60,000 Thai baht ($1,200-$1,500 USD) per month plus overtime and he would sign a contract to work in the United States for three years.

72. In or about 2004, the Thai labor recruiter, in Defendant PRANEE TUBCHUMPOL's presence, advised RS that he would

have to pay between $600,000-$650,000 Thai baht ($15,000-$16,250 USD) in recruitment fees to secure the U.S. job: RS actually paid $700,000 Thai baht ($17,500 USD).

73. In or about May 2004, in Thailand, Defendant PODJANEE SINCHAI met with Thai national KA, whose identity is known to the Grand Jury, and other Thai nationals whom she had recruited, offering jobs on farms in the U.S., and earning $8.72 per hour; with overtime pay at 1.5 times the hourly rate; for a contract term of three years; the recruitment fees would be between $400,000 to $700,000 Thai baht (approximately $10,000 to $17,500 USD); that $300,000 Thai baht (approximately ($7,500 USD) had to be paid up front; and the balance could be paid in the United States.

74. In or about June 2004, Defendant PODJANEE SINCHAI took KA and approximately 11 Thai nationals to the Bangkok AACO office and introduced them to Defendant RATAWAN CHUNHARUTAI who informed the Thai nationals that they would earn $80,000 Thai baht (approximately $2,000 USD) per month for 8 hours of work each day and overtime pay.

75. In or about June 2004, Defendant RATAWAN CHUNHARUTAI instructed KA and about 40 other Thai nationals, who had already paid a portion of the recruitment fees, to lie to the U.S. Embassy and state that each had paid AACO only $65,000 Thai baht (approximately $1,625 USD) in recruitment fees.

76. In or about June 2004, immediately after KA signed his employment contract with GLOBAL, Defendant PODJANEE SINCHAI told KA he owed AACO $300,000 Thai baht (approximately $7,500 USD) which KA paid by borrowing a portion of the money from Defendant PODJANEE SINCHAI at 3 percent interest compounded monthly secured by the deeds to his mother-in-law's land as collateral.

77. Between June 2004 and July 2004, Defendants RATAWAN CHUNHARUTAI and PODJANEE SINCHAI told KA and other Thai nationals on several occasions not to try to escape or flee from GLOBAL's client growers or housing once they entered the United States.

78. In or about June 2004, Defendant PODJANEE SINCHAI recruited BK in his home village to work in the United States on farms for up to three years at high wages if he paid a recruitment fee of $680,000 Thai baht ($17,000 USD) which would be secured by BK's family land.

79. In or about June 2004, Defendant PODJANEE SINCHAI and an AACO representative, directed BK to sign documents without reading them, advising there was not sufficient time for him to first read the documents and that failure to sign could result in the loss of the up-front recruitment fees BK had paid and that he would not be allowed to work in the United States.

80. On or about June 2, 2004, AK arrived in Seattle, Washington, from Thailand, and upon arrival a GLOBAL employee, whose identity is known to the grand jury, and who was supervised

by Defendants BRUCE SCHWARTZ and PRANEE TUBCHUMPOL, confiscated AK's passport.

81. In or about June 2004, in Washington state, Defendants BRUCE SCHWARTZ and PRANEE TUBCHUMPOL told AK and the newly arrived Thai H2A guest workers that they should not go outside because it was dangerous without their immigration documents, and not to break the rules or the Thai H2A guest workers would be sent back to Thailand.

82. In or about the Summer of 2004, in Washington State, Defendant BRUCE SCHWARTZ told a GLOBAL onsite supervisor, whose identity is known to the grand jury, and who spoke Thai, to tell the Thai H2A guest workers that if the workers tried to escape, Defendant JOSEPH KNOLLER would catch them and send them back to Thailand.

83. On or about July 4, 2004, KA, and approximately 52 Thai nationals entered the United States, and in Washington state, a GLOBAL employee, whose identity is known to the grand jury, and who was supervised by Defendant PRANEE TUBCHUMPOL, confiscated KA's and the other approximately 52 Thai nationals' passports stating it was on company orders, and if KA kept his passport he would not work.

84. On or about July 15, 2004, RS entered the United States on an H2A visa valid for only three weeks and in Washington state

Defendants PRANEE TUBCHUMPOL and BRUCE SCHWARTZ immediately confiscated RS' passport.

85. In or about July 2004, Defendant PRANEE TUBCHUMPOL told RS, PW, and other Thai H2A guest workers not to have contact with local people or the Thai Consulate and anyone who disobeyed would be sent back to Thailand.

86. In or about Spring 2004, through Summer 2004, Defendant JOSEPH KNOLLER, in Washington state, threatened to send AH home if he did not provide the location of workers who had "escaped."

87. In or about July 2004, in Washington state, Defendant PRANEE TUBCHUMPOL told KA and the other recently arrived Thai H2A guest workers that GLOBAL had the Thai H2A guest workers' passports, that they could not escape or flee because the police would arrest and deport them, and if the police did not find them GLOBAL had people who could find them and GLOBAL would send them back to Thailand.

88. Between in or about July 2004, and October 2004, in Washington state, Defendant PRANEE TUBCHUMPOL on several occasions told the Thai H2A guest workers not to talk to people from outside of the farm, not to leave the housing location because without documents the Thai H2A guest workers would be arrested, and not to escape or flee because the police or GLOBAL will find, arrest, deport, or send the Thai H2A guest workers back to Thailand.

89. Between in or about July 2004, and October 2004, in Washington state, Defendant PRANEE TUBCHUMPOL instructed the Thai H2A guest workers not to tell the U.S. Department of Labor investigators anything bad about GLOBAL unless they wanted to go home early.

**July 27, 2004, Yakima, Washington Detention of Thai H2A Guest Workers**

90. On or about July 27, 2004, in Yakima, Washington, approximately 24 GLOBAL Thai H2A guest workers, including RS and PW, were detained by federal immigration agents because they had no identification documents.

91. On or about July 27, 2004, a GLOBAL employee, whose identity is known to the Grand Jury, faxed copies of 24 Thai H2A guest workers' passports from the GLOBAL office at 11111 Santa Monica Blvd., Los Angeles, CA., to Defendant BRUCE SCHWARTZ in Yakima, Washington, to give to the immigration agents.

**October/November 2004 Yakima, Washington Confinement**

92. In or about October 2004, continuing through November 2004, in Yakima, Washington, Defendants PRANEE TUBCHUMPOL and BRUCE SCHWARTZ, held several meetings with approximately 60 to 100 Thai H2A guest workers to discuss the guest workers' complaints about irregular and insufficient work hours, insufficient and late pay causing problems for the workers who needed to make payments on their large debts incurred to pay the up-front recruitment fees.

93. Between in or about October 2004, continuing through November 2004, in Yakima, Washington, JS, AB, MC, SP and PK, whose identities are known to the Grand Jury, picked apples at Green Acres Farm, and elsewhere in Washington state, on an irregular schedule, not full-time as promised, and for insufficient wages which were often paid late.

94. In or about October 2004, continuing through November 2004, in Yakima, Washington, Defendants PRANEE TUBCHUMPOL and BRUCE SCHWARTZ told RS, PW, and other Thai H2A guest workers that GLOBAL would be moving them to work on farms in Hawaii where they would have more work hours.

95. In or about October 2004, continuing through November 2004, in Yakima, Washington, Defendant JOSEPH KNOLLER hired five to six men ("the GLOBAL guards") to guard YP, NS, PS, MC, whose identities are known to the Grand Jury, and approximately 57 other Thai H2A guest workers at GLOBAL's housing, to prevent the workers from running away, and Defendant KNOLLER intimidated the Thai H2A guest workers by telling them that he was a former FBI agent and that the guards were former military men.

96. In or about October 2004, continuing through November 2004, in Yakima, Washington, Defendants JOSEPH KNOLLER and BRUCE SCHWARTZ, directed GLOBAL guards to restrict the movement of YP, NS, PS, MC, and approximately 57 other Thai H2A guest workers, by not allowing them to leave the apartment building unescorted and

guarding the exits of the apartment building and placing guards in parked cars on the street next to the apartment building.

97. In or about October 2004, through November 2004, in Yakima, Washington, the GLOBAL guards transported YP, NS, PS, MC, MT, and approximately 57 other Thai H2A guest workers to an airport in Seattle, flew with them from Seattle to Los Angeles, escorted the workers to their gate for their flight to Thailand, and on November 3, 2004, Defendant BRUCE SCHWARTZ escorted the Thai H2A guest workers from Los Angeles back to Thailand.

**Maui, Hawaii: 2004 - 2005**

98. In or about the Summer of 2004, in Maui, Hawaii, Defendant JOSEPH KNOLLER, called a meeting of the Thai H2A guest workers and told the workers that he did not want anyone escaping; that a worker who previously escaped had been shot; and that only if "you have power or wings" can you "fly away from the island."

99. In or about the Summer of 2004, in Maui, Hawaii, Defendant JOSEPH KNOLLER, after accusing AH of encouraging other Thai H2A guest workers to run away and of withholding information about their whereabouts, slapped AH and threatened to send him home.

100. In or about the Summer of 2004, at Maui Pineapple Farm, Maui, Hawaii, Defendant SAM WONGSESANIT grabbed a Thai H2A guest worker by his shirt and threw him against a wall.

101. In or about October 2004, GLOBAL sent BK, KA, and approximately 21 other Thai H2A guest workers from Washington state to Maui, Hawaii: Defendant BRUCE SCHWARTZ handed the workers their passports in Washington state so they could board the airplane and Defendant SAM WONGSESANIT confiscated the workers' passports in Maui, Hawaii when they landed as ordered by Defendant SHANE GERMANN.

102. In or about October 2004, Defendant SAM WONGSESANIT told BK and other Thai H2A guest workers at Maui Pineapple Farm not to cause problems or run away, or GLOBAL would send the workers back to Thailand.

103. From in or about October 2004, through September 2005, Defendant SAM WONGSESANIT conducted a nightly roll call to ensure no workers had run away and told workers that if anyone was missing everyone would be sent home.

104. From in or about October 2004, through September 2005, Defendant SAM WONGSESANIT told BK, KA, BP, and other Thai H2A guest workers, not to socialize with outsiders, not to complain, and that if anyone threatened him, he would shoot them because he had a gun.

105. Between August 2005 and August 2006, in Hawaii, Defendant SAM WONGSESANIT carried a small gun, visibly, in the waistband of his pants.

106. On or about June 23, 2005, when YP arrived in the United States for the third time, in Honolulu, in the District of Hawaii, Defendant SAM WONGSESANIT confiscated YP's passport and GLOBAL kept YP's passport while he worked on Maui and the big island of Hawaii performing agricultural labor for GLOBAL's grower clients: YP's passport was returned in August 2006 and his I-94 was returned in June 2007.

**Maui Pineapple Farm Confinement: 2005**

107. Between in or about 2004, continuing through September 14, 2005, in the District of Hawaii, BK, and approximately 100 Thai H2A guest workers were employed by GLOBAL as agricultural workers at Maui Pineapple Farm, working irregular and insufficient hours, housed in isolated and basic facilities, with limited freedom of movement imposed by GLOBAL house rules imposed by onsite supervisors Defendants SHANE GERMANN and SAM WONGSESANIT.

108. Between in or about July 2005, or August 2005, Defendant SAM WONGSESANIT handed out to 100 Thai H2A guest workers at Maui Pineapple Farm, copies of each Thai national's federal immigration Notice of Action document indicating that their visas were expiring September 15, 2005.

109. In or about August 2005, or early September 2005, Defendants PRANEE TUBCHUMPOL and RATAWAN CHUNHARUTAI convened a meeting at Maui Pineapple Farm in the presence of Defendants SAM

WONGSESANIT and SHANE GERMANN, and told KA, BP, and other Thai H2A guest workers that those who were recruited by AACO and paid lower commission fees of approximately $380,000 Thai baht ($9,500 USD) would have to pay an additional $150,000 Thai baht ($3,750 USD) to renew their contracts or the worker would be sent back to Thailand.

110. In or about August 2005, Defendants PRANEE TUBCHUMPOL and RATAWAN CHUNHARUTAI at the same meeting in Maui, Hawaii, told KA, BK, and the other Thai H2A guest workers not to escape, not to socialize with outsiders, not to work elsewhere even if GLOBAL had insufficient work for them, and not to discuss incidents within the company with outsiders.

111. In or about August 2005, Defendant SAM WONGSESANIT, interpreting for Defendant MORDECHAI ORIAN, told KA and approximately 20 other Thai H2A guest workers, not to escape or attempt to find work on their own, and that if they disobeyed this order they would be sent back to Thailand.

112. In or about August 2005, Defendant PODJANEE SINCHAI visited KA's and BP's families in Thailand and Defendant PODJANEE SINCHAI told the families that KA, BP, or the family had to pay an additional $150,000 Thai baht ($3,750 USD) if KA and BP wanted to stay and work in the United States for an additional year.

113. On or about August 29, 2005, Defendant PRANEE TUBCHUMPOL arrived in Hawaii with the Thai passports for the Maui Pineapple Farm Thai H2A guest workers.

114. On or about August 29, 2005, a GLOBAL employee, known to the Grand Jury, arrived in Maui, Hawaii, and hired five to six male and female guards to prevent the Maui Pineapple Farm Thai H2A guest workers from running away.

115. In or about August 2005, Defendant SAM WONGSESANIT under instruction of Defendant MORDECHAI ORIAN directed the Thai H2A guest workers not to talk to U.S. Department of Labor investigators who were at Maui Pineapple Farm and stated that any Thai worker who disobeyed this order would be sent back to Thailand.

116. On or about September 1, 2005, Defendants PRANEE TUBCHUMPOL, RATAWAN CHUNHARUTAI, SHANE GERMANN and SAM WONGSESANIT held a meeting at the Maui Pineapple Farm housing area with approximately 70 to 100 Thai H2A guest workers whose visas were expiring on September 15, 2005, where Defendant PRANEE TUBCHUMPOL read a list of Thai H2A guest workers whom GLOBAL intended to send back to Thailand.

117. On or about September 1, 2005, at the Maui Pineapple Farm meeting, Defendants PRANEE TUBCHUMPOL and RATAWAN CHUNHARUTAI informed the workers who paid lower recruitment fees that they would be sent back to Thailand unless their families

paid an additional $150,000 Thai baht ($3,750 USD) to the Thai recruiters who had recently contacted their families for the additional fees.

118. Between on or about September 1, 2005, through September 14, 2005, Defendants JOSEPH KNOLLER, SAM WONGSESANIT, SHANE GERMANN, and others known and unknown to the Grand Jury, worked as security guards, 24 hours a day, at the Maui Pineapple Farm housing site to restrict the workers' movement, whether at the housing or at the farm, to prevent the workers from leaving.

119. Between on or about September 1, 2005, and September 13, 2005, Defendants MORDECHAI ORIAN, PRANEE TUBCHUMPOL, JOSEPH KNOLLER, and others known to the Grand Jury, personally supervised and directed the security detail at Maui Pineapple Farm, including hiring additional individuals to guard the property.

120. Between on or about September 3, 2005 and September 13, 2005, Defendant MORDECHAI ORIAN contacted an individual, whose identity is known to the Grand Jury, and urged him to travel immediately to Maui Pineapple Farm to assist as security to keep the workers, whose visas were expiring, from running away.

121. Between on or about September 1, 2005 and September 13, 2005, Defendants SAM WONGSESANIT and SHANE GERMANN strung yellow tape around the Maui Pineapple Farm housing and installed bells on string lines in the woods to alert the guards if a worker

attempted to escape and to maintain their control over the Thai H2A guest workers.

122. On or about September 13, 2005, Defendant Joseph KNOLLER, through Defendant SAM WONGSESANIT as translator, informed approximately 40-50 Thai H2A guest workers that they would be leaving on an airplane the following day and not to leave the building.

123. On or about September 14, 2005, Defendants JOSEPH KNOLLER and SAM WONGSESANIT escorted the Thai H2A guest workers onto the airplane from Honolulu, in the District of Hawaii, to the mainland and then escorted them onto the connecting flight back to Thailand.

124. On or about September 14, 2005, Defendant JOSEPH KNOLLER hired guards for airport duty to ensure the Thai H2A guest workers boarded their flight back to Thailand.

125. Between September 1, 2005 and September 14, 2005, Defendants MORDECHAI ORIAN and PRANEE TUBCHUMPOL relocated KA, BK, and other Thai H2A guest workers who paid higher recruitment fees, to other farms to work.

126. On or about September 7, 2005, after Defendants MORDECHAI ORIAN, PRANEE TUBCHUMPOL, SAM WONGSESANIT and SHANE GERMANN threatened to send BP, and other Thai H2A guest workers who had paid lower recruitment fees, back to Thailand. BP, fearing being sent back to Thailand with no way to repay his

debts, ran away because he could not pay the additional $150,000 Thai baht ($3,750 USD), and because he had outstanding recruitment debts in Thailand.

127. On or about September 14,2005, Defendant PRANEE TUBCHUMPOL escorted 41 Thai H2A guest workers back to Thailand on Japan Airlines flight #71.

**GLOBAL Transport of Thai H2A Guest Workers in Hawaii**

128. On or about May 12, 2005, Defendant MORDECHAI ORIAN purchased, paying cash, a Piper Aztec, Tail number N559JT, to transport GLOBAL's Thai H2A guest workers between Hawaiian islands and to the mainland.

129. On or about May 12, 2005, Defendant MORDECHAI ORIAN hired a pilot, whose identity is known to the Grand Jury, to fly the Piper Aztec.

130. On or about May 24, 2005, through December 20, 2006, the Piper Aztec, Tail number N559JT, airplane transported Thai H2A guest workers and Defendants MORDECHAI ORIAN and SHANE GERMANN, and other GLOBAL employees on approximately 45 occasions between the islands of Hawaii.

131. On or about June 9, 2005, the Piper Aztec, Tail number N559JT, airplane was used to transport one Thai H2A guest worker to Kona and Defendant SHANE GERMANN to Maui.

132. On or about June 25, 2005, the Piper Aztec, Tail number N559JT, transported four Thai H2A guest workers to Kona and one from Kona to Maui.

133. On or about September 3, 2005, the Piper Aztec, Tail number N559JT, transported the pilot, one Thai H2A guest worker, and the pilot's friend to Kona, and the Aztec Piper flew five round trips to Maui transporting 20 Thai H2A guest workers and their bags to work at Mac Nuts in Hawaii.

134. On or about September 4, 2005, the Piper Aztec, Tail number N559JT, transported six Thai H2A guest workers and 1100 pounds of bags to Kona.

135. On or about September 5, 2005, the Piper Aztec, Tail number N559JT, was flown between Honolulu and Maui and transported the pilot, his friend who assisted with the Maui Pineapple Farm 2005 confinement, a GLOBAL employee, and one Thai H2A guest worker.

136. On or about September 8, 2005, the Piper Aztec, Tail number N559JT, transported Defendants MORDECHAI ORIAN and SHANE GERMANN to Kona for the day.

137. On or about December 8, 2005, the Piper Aztec, Tail number N559JT, transported Defendant SHANE GERMANN and three Thai H2A guest workers to Kona.

138. On or about December 24, 2005, the Piper Aztec, Tail number N559JT, transported Thai H2A guest workers' passports to Kauai.

139. On or about December 24, 2005, the Piper Aztec, Tail number N559JT, transported a GLOBAL onsite Hawaii supervisor and nine Thai H2A guest workers to Los Angeles, California together with approximately 40-60 passports.

140. On or about March 14, 2006, the Piper Aztec, Tail number N559JT, transported Defendant MORDECHAI ORIAN and "junior representatives" to Kona for a power meeting.

141. On or about May 26, 2006, the Piper Aztec, Tail number N559JT, transported a GLOBAL employee and one Thai H2A guest worker to Maui.

142. On or about June 21, 2006, the Piper Aztec, Tail number N559JT, transported three Thai H2A guest workers and documents.

143. Between in or about September 2005, and September 2006, Thai H2A guest worker AP was transported by GLOBAL to work on farms on Oahu and the big island of Hawaii in the Piper Aztec, Tail number N559JT, during which time AP's visa was expired.

144. Between on or about June 12, 2005, through April 2007, Thai H2A guest worker PT worked for GLOBAL on farms in Hawaii and the main land and was transported by GLOBAL between the Hawaiian islands on a private airplane.

145. In or about August 2005, Thai H2A guest worker AP, whose passport was previously confiscated by a GLOBAL onsite supervisor, was transported by GLOBAL in the Piper Aztec, Tail number N559JT, from Maui Pineapple Farms in Maui, where he was employed by GLOBAL, to Oahu where he was employed by GLOBAL at Larry Jefts Farm.

146. In or about August 2006, Thai H2A guest worker AP was transported by GLOBAL in the Piper Aztec, Tail number N559JT from Oahu to the big island of Hawaii.

**Washington State: 2005**

147. Between in or about February 2005, through August 2005, in Washington State, GLOBAL onsite supervisors, whose identities are known to the Grand Jury, confiscated PW's, AT's, and other Thai H2A guest workers' passports at the direction of Defendants MORDECHAI ORIAN, PRANEE TUBCHUMPOL and BRUCE SCHWARTZ, all of whom explained to the GLOBAL onsite supervisors that taking the passports was to keep the Thai H2A guest workers from running away.

148. Between in or about February 2005, through August 2005, in Washington State, the same GLOBAL onsite supervisors, under instruction of Defendants MORDECHAI ORIAN, PRANEE TUBCHUMPOL and BRUCE SCHWARTZ, sent packages of Thai H2A guest workers' passports by federal express to the GLOBAL Los Angeles, CA

office, addressed to the attention of a GLOBAL employee, whose identity is known to the Grand Jury.

**Kona, Hawaii: 2005 - 2007**

149. On or about January 16 and 23, 2005, and February 6, 2005, in Kona, in the District of Hawaii, Defendant MORDECHAI ORIAN, in the presence of Defendant BRUCE SCHWARTZ, directed a GLOBAL onsite supervisor, whose identity is known to the Grand Jury, to send approximately 15 Thai H2A guest workers to the personal residence of Defendant MORDECHAI ORIAN, which residence was known as "Talia Ranch" and titled in his wife's name, and to arrange a barbeque for the workers in lieu of paying the workers for their labor.

150. In or about August 2005, AT and other Thai H2A Thai guest workers transited from Los Angeles, California, to Kona, Hawaii and a GLOBAL employee identified as "Joe" handed AT and the other Thai H2A guest workers their passports at the Los Angeles airport.

151. In or about August 2005, AT and other Thai H2A Thai guest workers' passports were confiscated by Defendant SAM WONGSESANIT when they landed in Kona, in the District of Hawaii, transiting from Los Angeles, California.

152. In or about August 2005, Defendant SAM WONGSESANIT told the Thai H2A guest workers not to leave their housing.

153. Between in or about October 26, 2005 and April 2007, in Kona, Hawaii, Defendant PRANEE TUBCHUMPOL met with the Thai H2A guest workers who complained about their visas expiring, their unpaid wages, and the large debts the H2A guest workers had incurred in Thailand to obtain the U.S. jobs, and Defendant PRANEE TUBCHUMPOL responded that workers who violated the rules, did not behave or who had problems, could be sent back to Thailand.

154. In or about July 2005, or August 2005, at Mac Farms in Kona, Hawaii, Defendants MORDECHAI ORIAN, PRANEE TUBCHUMPOL AND BRUCE SCHWARTZ informed the Thai H2A workers that their visas were expiring, that they would need to return to Thailand, and reapply to return to the United States, although the workres had been promised three years of full-time employment.

155. On or about August 8, 2005, Defendants BRUCE SCHWARTZ and PRANEE TUBCHUMPOL, on orders of Defendant MORDECHAI ORIAN, escorted the Thai H2A guest workers in Kona, Hawaii back to Thailand.

**Utah: 2006-2007**

156. In or about February 2007, continuing through March 2007, Defendant PRANEE TUBCHUMPOL, several times on speaker phone, told PS, WC, RS and other Thai H2A guest workers who were housed in Beaver County, Utah, not to tell anyone that they were not being paid as promised by GLOBAL, and that any guest worker

who complained about unpaid wages or did not go to work would be deported.

157. In or about March 2007, continuing through April 2007, Defendant PRANEE TUBCHUMPOL told RS and the other Thai H2A guest workers not to have contact with outsiders or GLOBAL would sent the Thai H2A guest workers back to Thailand.

158. In or about May 2007, Defendant PRANEE TUBCHUMPOL, on telephone speaker phone, told PS, WC, and other Thai H2A guest workers who were housed in Beaver County, Utah, and were only provided sporadic and insufficient work to repay their recruitment debts in Thailand, that they could either sign papers authorizing GLOBAL to obtain other types of visas for the guest workers at a charge of $200 USD to be deducted from each guest worker's wages, or the workers could be deported.

**New York: 2007**

159. In or about July 2007, in New York state, Thai national MC, whose identity is known to the Grand Jury, was told by Defendant PRANEE TUBCHUMPOL that she was sending him back to Thailand, following MC's continuous complaining that GLOBAL was four to five weeks late in paying the Thai H2A guest workers' wages for agricultural work they performed at Foristar Farms at the direction of GLOBAL.

All in violation of Title 18, United States Code, Sections 371 and 1589.

COUNT 2

The Grand Jury further charges:

Beginning on or about September 1, 2005, and continuing through in or about September 15, 2005, all dates being approximate and inclusive, in the District of Hawaii, and elsewhere, defendants,

MORDECHAI ORIAN,
PRANEE TUBCHUMPOL, and
RATAWAN CHUNHARUTAI,

aiding and abetting each other, attempted to and did knowingly provide and obtain the labor and services of Thai national KA, whose identity is known to the Grand Jury, by threats of serious harm to KA and by means of a scheme, plan and pattern intended to cause KA to believe that if he did not perform such labor and services, he, or another person, would suffer serious harm, and by means of the abuse and threatened abuse of law and the legal process.

All in violation of Title 18, United States Code, Sections 1589, 1594 and 2.

COUNT 3

The Grand Jury further charges:

Beginning on or about September 1, 2005, and continuing through on or about September 15, 2005, all dates being approximate and inclusive, in the District of Hawaii, and elsewhere, defendants,

MORDECHAI ORIAN,
PRANEE TUBCHUMPOL, and
RATAWAN CHUNHARUTAI,

aiding and abetting each other, attempted to and did knowingly provide and obtain the labor and services of a Thai national BP, whose identity is known to the Grand Jury, by threats of serious harm to BP and by means of a scheme, plan and pattern intended to cause BP to believe that if he did not perform such labor and services, he, or another person, would suffer serious harm, and by means of the abuse and threatened abuse of law and the legal process.

All in violation of Title 18, United States Code, Sections 1589, 1594 and 2.

COUNT 4

(Forced Labor)

The Grand Jury further charges:

Beginning on or about September 1, 2005, and continuing through on or about September 15, 2005, all dates being approximate and inclusive, in the District of Hawaii, and elsewhere, defendants,

MORDECHAI ORIAN,
PRANEE TUBCHUMPOL, and
RATAWAN CHUNHARUTAI,

aiding and abetting each other, attempted to and did knowingly provide and obtain the labor and services of Thai national BK, whose identity is known to the Grand Jury, by threats of serious

harm to BK and by means of a scheme, plan and pattern intended to cause BK to believe that if he did not perform such labor and services, he, or another person, would suffer serious harm, and by means of the abuse and threatened abuse of law and the legal process.

All in violation of Title 18, United States Code, Sections 1589, 1594 and 2.

COUNT 5

(Forced Labor)

The Grand Jury further charges:

Beginning on or about January 5, 2006, and continuing through in or about April 2007, all dates being approximate and inclusive, in the District of Hawaii, and elsewhere, defendants,

MORDECHAI ORIAN, and
PRANEE TUBCHUMPOL,

aiding and abetting each other, attempted to and did knowingly provide and obtain the labor and services of Thai national AT, whose identity is known to the Grand Jury, by threats of serious harm to AT and by means of a scheme, plan and pattern intended to cause AT to believe that if he did not perform such labor and services, he, or another person, would suffer serious harm, and by means of the abuse and threatened abuse of law and the legal process.

All in violation of Title 18, United States Code, Sections 1589, 1594 and 2.

COUNT 6

(Forced Labor)

The Grand Jury further charges:

Beginning on or about January 5, 2006, and continuing through in or about September 2006, all dates being approximate and inclusive, in the District of Hawaii, and elsewhere, defendants,

MORDECHAI ORIAN,
PRANEE TUBCHUMPOL,
SHANE GERMANN, and
SAM WONGSESANIT,

aiding and abetting each other, attempted to and did knowingly provide and obtain the labor and services of Thai national AP, whose identity is known to the Grand Jury, by threats of serious harm to AP and by means of a scheme, plan and pattern intended to cause AP to believe that if he did not perform such labor and services, he, or another person, would suffer serious harm, and by means of the abuse and threatened abuse of law and the legal process.

All in violation of Title 18, United States Code, Sections 1589, 1594 and 2.

COUNT 7

(Document Servitude Conspiracy)

The allegations contained in paragraphs 1 through 159 of this Indictment are incorporated herein and by reference.

The Grand Jury further charges:

From on or about August 14, 2002, and continuing through on or about July 2007, in the District of Hawaii and elsewhere, defendants,

MORDECHAI ORIAN,
PRANEE TUBCHUMPOL,
BRUCE SCHWARTZ,
SHANE GERMANN,
SAM WONGSESANIT,

and others known and unknown to the Grand Jury, did knowingly and willfully combine, confederate, conspire and agree with one another to hold Thai nationals in a condition of document servitude by knowingly destroying, concealing, removing, confiscating, or possessing any actual or purported passport or other immigration document, or any other actual purported government identification document of another person:

(a) in the course of a violation of 18 U.S.C. § 1589;

(b) with intent to violate 18 U.S.C. § 1589; and

(c) to prevent or restrict or attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons.

All in violation of Title 18, United States Code, Sections 371 and 1592.

COUNT 8

(Document Servitude)

The allegations contained in paragraphs 1 through 149 of this Indictment are incorporated herein and by reference. The Grand Jury further charges:

From between January 5, 2006, through in or about April 2007, in the District of Hawaii and elsewhere, defendants,

MORDECHAI ORIAN,
PRANEE TUBCHUMPOL, and
SAM WONGSESANIT,

did knowingly and willfully hold Thai national AT in a condition of document servitude by knowingly destroying, concealing, removing, confiscating, or possessing any actual or purported passport or other immigration document, or any other actual purported government identification document of another person:

(a) in the course of a violation of 18 U.S.C. § 1589;

(b) with intent to violate 18 U.S.C. § 1589; and

(c) to prevent or restrict or attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons.

All in violation of Title 18, United States Code, Sections 2 and 1592.

COUNT 9

(Document Servitude)

The allegations contained in paragraphs 1 through 149 of this Indictment are incorporated herein and by reference.

The Grand Jury further charges:

From between January 5, 2006, through on or about April 2007, in the District of Hawaii and elsewhere, defendants,

MORDECHAI ORIAN,
PRANEE TUBCHUMPOL, and
SAM WONGSESANIT,

did knowingly and willfully hold Thai national BK in a condition of document servitude by knowingly destroying, concealing, removing, confiscating, or possessing any actual or purported passport or other immigration document, or any other actual purported government identification document of another person:

(a) in the course of a violation of 18 U.S.C. § 1589;

(b) with intent to violate 18 U.S.C. § 1589; and

(c) to prevent or restrict or attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons.

All in violation of Title 18, United States Code, Sections 2 and 1592.

COUNT 10

(Harboring for Financial Gain)

The Grand Jury further charges:

From on or about January 5, 2006, and continuing through on or about May 23, 2006, in the District of Hawaii and elsewhere, the defendant, MORDECHAI ORIAN, knowing and in reckless disregard of the fact that Thai national AP, an alien, has come to, entered, and remained in the United States in violation of law did, conceal, harbor, and shield AP from detection in any place, or attempt to conceal, harbor, and shield from detection, AT, including in any building or any means of transportation, for the purpose of commercial advantage and private financial gain.

All in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and (a)(1)(B)(i).

COUNT 11

(Transporting for Financial Gain)

The Grand Jury further charges:

From on or about January 5, 2006, and continuing through on or about May 23, 2006, in the District of Hawaii and elsewhere, the defendant, MORDECHAI ORIAN, knowing and in reckless disregard of the fact that Thai national AP, an alien, came to, entered, and remained in the United States in violation of law, transported and moved, and attempted to transport and

move such alien within the United States by means of transportation and otherwise, in furtherance of such violation of law, for the purpose of commercial advantage and private financial gain.

All in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (a)(1)(B)(i).

FORFEITURE ALLEGATIONS

Title 18, United States Code, Section 1594 Forfeiture

1. The allegations contained in Count 1 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 1594.

2. Pursuant to Title 18, United States Code, Section 1594, upon conviction of an offense in violation of Title 18, United States Code, Section 1589, the defendants, MORDECHAI ORIAN, PRANEE TUBCHUMPOL, SHANE GERMANN, SAM WONGSESANIT, RATAWAN CHUNHARUTAI, PODJANEE SINCHAI, BRUCE SCHWARTZ and JOSEPH KNOLLER, shall forfeit to the United States of America (1) any property, real or personal, used or intended to be used to commit or to facilitate the commission of the offenses; and (2) any property, real or personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses. The property to be forfeited includes, but is not limited to, the following:

One (1) 1960 Grey Piper Aztec Model PA-23-250 Fixed Wing, Multi-Engine Aircraft, Serial No. 27-286, Registration no. N559JT, Including All Maintenance, Engine and Aircraft Logs, and All Attachments Thereon.

3. If any of the property described above, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

<u>Title 18, United States Code, Section 982(a)(6) Forfeiture</u>

4. The allegations contained in Counts 1, 10 and 11 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(6).

5. Pursuant to Title 18, United States Code, Section 982(a)(6), upon conviction of an offense in violation of Title 8,

United States Code, Section 1324(a), the defendants, MORDECHAI ORIAN, SHANE GERMANN and SAM WONGSESANIT, shall forfeit to the United States of America any conveyance, including any vessel, vehicle, or aircraft, used in the commission of the offense of which the defendants are convicted, any property, real or personal, that constitutes or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of which the defendants are convicted, and any property, real or personal, used to facilitate or intended to be used to facilitate the commission of the offense of which the defendants are convicted. The property to be forfeited includes, but is not limited to, the following:

> One (1) 1960 Grey Piper Aztec Model PA-23-250 Fixed Wing, Multi-Engine Aircraft, Serial No. 27-286, Registration no. N559JT, Including All Maintenance, Engine and Aircraft Logs, and All Attachments Thereon.

6. If any of the property described above, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b).

All in violation of Title 18, United States Code, Sections 982 and 1594, and Title 28, United States Code, Section 2461(c).

DATED: January 12, 2011, at Honolulu, Hawaii.

A TRUE BILL

/s/ Foreperson
FOREPERSON, GRAND JURY

FLORENCE T. NAKAKUNI
United States Attorney
District of Hawaii

SUSAN CUSHMAN
Assistant U.S. Attorney

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

SUSAN FRENCH
KEVONNE SMALL
Trial Attorneys
Human Trafficking Prosecution Unit
Criminal Section
Civil Rights Division