# MEMORANDUM OF POINTS AND AUTHORITIES
# IN SUPPORT OF MOTION

## I.    Authority for Motion

Rule 6 of the Federal Rules of Criminal Procedure recognizes that there will be cases such as this one where the District Court should order disclosure.

Rule 6(e)(3)(C)(ii) provides:

> "Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made – (ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." (Underlining supplied.)

### A.    Applicable Standards

The "particularized need" test has been held to apply to requests for disclosure under Rule 6(e)(3)(C):

> "A trial judge should order disclosure of grand jury transcripts only when a party seeking them has demonstrated that a 'particularized need exists * * * which outweighs the policy of secrecy.' *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (9159). The 'particularized need' standard was reaffirmed in *Dennis v. United States*, 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (9166) with a general suggestion in *favor of disclosure*." [italics added] *United States* v. *Walczak*, 783 F.2d 852, 857 (9th Cir. 1986).

The Supreme Court has clearly stated the standard for dismissal of an indictment due to a matter that occurred before the grand jury:

> "[D]ismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (internal quotes omitted).

1    Disclosure of the grand jury proceedings in this case is therefore warranted

2 if Defendant shows that grounds may exist to support dismissal of this

3 indictment under *Bank of Nova Scotia*. Defendant meets this burden, because

4 the prosecution has admitted, in this Court, affirmatively misinforming the

5 grand jury about a key question of law, in a companion case that involves the

6 same issues and many of the same facts as this case.

7    The standards the trial court should apply in granting disclosure of the

8 grand jury transcripts are "(1) that the desired material will avoid a possible

9 injustice, (2) that the need for disclosure is greater than the need for continued

10 secrecy, and (3) that only the relevant parts of the transcripts should be

11 disclosed." *United States v. Plummer,* 941 F.2d 799, 806 (9th Cir.1991) (citing

12 *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 1674,

13 60 L.Ed.2d 156 (1979)).

14    Defendant meets this standard for the same reason: the prosecutor who

15 obtained the indictment against him has been found by this Court to have

16 affirmatively misrepresented to the grand jury the legality of the conduct that

17 is at the heart of the allegations in this case: recruitment fees paid in Thailand

18 by Thai H2-A workers.

19 **II.    The Allegation of Misconduct Is Not Speculative, but Rather**

20    **Based on the Prosecutor's Own Admissions**

21    Defendant bears the burden of showing that it is likely that specific

22 instances of misconduct occurred. In this case, Defendant can meet that burden,

23 because the prosecutor who obtained the indictment in this case, Susan French,

24 has admitted to this Court that she affirmatively misled the grand jury in

25 securing the indictment in the Sou case. If she made the same misrepresentation

26 to the grand jury in securing this indictment, the inference is inescapable that

27 the grand jury would have been substantially influenced by that

28 misrepresentation in its charging decision, because the misrepresentation

1  concerns the legality of the conduct that forms the core of the Government's

2  allegations in the indictment.

3      Courts routinely deny defense motions for disclosure of grand jury

4  materials on the grounds that the defense has no specific allegations of

5  misconduct, and simply wants to go fishing in the transcripts. Indeed, when the

6  Sou defendants moved for disclosure, that is precisely how the government

7  responded:

8      "Defendants neither allege nor demonstrate that a violation of any
       nature occurred here, much less one that substantially influenced
9      the Grand Jury's decision to indict . . . [D]efendants ask this Court
       to commit error and reveal the Grand Jury evidence just because
10     defendants would like to look through it . . . There is absolutely no
       evidence that the prosecutor engaged in misconduct . . . The
11     allegations of misconduct against counsel for the United States are
       decidedly personal and unwarranted." United States v. Sou, 09-cr-
12     345, Dkt. # 155-1, at 12, 14.

13     That response was dated March 11, 2011. Subsequent events revealed the

14  Government's claim of prosecutorial propriety to be incorrect. On August 3,

15  2011, Ms. French admitted to this Court that she had misrepresented the law to

16  the grand jury.   See Exhibit 1, <u>Excerpt of Reporter's Transcript of 8/3/11</u>

17  <u>Proceedings in the Sou Trial</u>.

18     Two days after these disclosures by the Government, discussed in detail

19  below, this Court granted the Government's motion for dismissal. Ms. French

20  did not return to court, see 09-cr-345, Dkt. # 287, and shortly thereafter the

21  prosecution team in this case—which had been the same as in the Sou case—was

22  replaced. See 10-cr-576.

23     There is nothing "speculative, personal, or unwarranted" about the

24  allegation made herein which forms the basis for this disclosure motion and

25  which Defendant anticipates will form the basis for a motion to dismiss: Ms.

26  French made the same misrepresentation to the grand jury that she made in

27  securing the Sou indictment.

28

1       Specifically, Ms. French admitted that she misled the grand jury about
2   whether the charging of recruitment fees to Thai H2-A workers was a violation
3   of U.S. law.  Ms. French told the grand jury that it was, but later admitted to this
4   Court that it was not.

5       Although throughout the time period covered by the Sou indictment and
6   the indictment in this case such fee-charging was <u>entirely legal</u>,  Ms. French told
7   the grand jury it was illegal.

8       The fee-charging arrangement is at the core of both indictments.  In both
9   cases, the Government alleged that the defendants conspired to trap Thai
10  workers in the U.S. by ensuring that they were charged high recruitment fees,
11  and then indentured to work in the United States in order to repay those fees.
12  Ms. French told the grand jury that it was illegal to charge recruitment fees, thus
13  making any fee arrangements an integral part of the alleged conspiracy to
14  defraud the United States and exploit the H2-A workers.  She subsequently
15  admitted to this Court that that statement was inaccurate: "I think it's not an
16  accurate statement of the law."  Sou RT, Vol. 3, p. 14, lns. 4-5.  <u>Exhibit 1</u>.

17      At the Sou trial, the following facts were exposed:  A witness, Matee,
18  testified that he had testified before the Grand Jury about the collection of
19  recruitment fees.  Ms. French asked Mr. Matee, "Did you know that under the
20  H2A program that the workers, the foreign workers, could not be charged any
21  recruitment fee?"   RT, Case No. CR 09-00345 SOM (United States v. Alec
22  Souphone Sou and Mike Mankone Sou), 8/2/11, Vol. 3, p. 5.  Mr. Mattee further
23  stated, in response to a question by Miss French about the illegality of
24  recruitment fees, "I guess I know that now because you, Miss French, are telling
25  me that."   RT, 8/3/11, p. 163, lns. 10-16.  Ms. French subsequently told the
26  witness, "Well, you said you thought when you collected the money it was legal,
27  but you already testified that you knew under the H2A program it was unlawful
28  to collect any recruitment fee."  RT, Case No. CR 09-00345 SOM (United States

v. Alec Souphone Sou and Mike Mankone Sou), 8/2/11, Vol. 3, p. 5. <u>Exhibits 1,</u> <u>2, Excerpts of the Reporter's Transcripts in the Sou Trial.</u>

There is every reason to believe that Ms. French made the same incorrect statements of law to the grand jury in obtaining the indictment in this case, because the core theory of the indictment here is the same as the core theory of the Sou indictment.

When questioned by this Court on August 3, 2011, Ms. French explained her misrepresentation as follows: "That was my understanding <u>at the time I</u> <u>asked the question.</u>"   The superseding indictment in the Sou case was handed up on October 27, 2010. Sou, 09-cr-345, Dkt. #127. The superseding indictment in this case was handed up on September 1, 2010, nearly two months earlier. If, as she stated in open court, Ms. French believed on October 27, 2010 that recruitment fees were illegal under the H2A program in 2004, she must also have believed that they were illegal under the H2A program in 2004 on September 1, 2011.

Nor is it plausible that she simply did not mention the legality of the fees before the Grand Jury in securing the indictment in this case.  The indictment itself confirms the centrality of the recruitment fees to the government's theory of this case. Paragraph 8 describes the charged conspiracy as follows: "The object of the conspiracy was to obtain cheap, compliant labor performed by Thai H2A guest workers indebted by the defendants' recruitment fees . . ." The recruitment fees are likewise the subject of Paragraphs 11, 13, 15, 17, 19, 21, 22, 23, 30, 37, and 39 of the indictment.

III.   **The Alleged Misrepresentation of Law Is Central to the Government's Theory of the Case**

By linking the recruitment fees to the defendants and by informing the grand jury that such fees are, themselves, illegal, the Government would likely

-7-

1    have influenced the grand jury to indict these defendants, based on a flatly

2    incorrect statement of the law.

3         The Government should not be heard to argue that the legality of the

4    recruitment fees was irrelevant to the charged offenses. Indeed, in the Sou case,

5    it stipulated that it would be prohibited from "in any way stating or suggesting

6    to the jury that the charging of recruitment fees was illegal under the H2A

7    program, any of its regulations, governing statutes, or other laws." This Court

8    proposed this Order after learning of Ms. French's misrepresentation to the

9    grand jury, and the Government did not oppose it.  *Id.*, p. 14, lns. 15-21. This

10   Court, in other words, found the misrepresentation of law sufficiently material

11   to the charged conduct that it could affect the petit jury's deliberations, and the

12   Government agreed.  The Government should not now be heard to argue that

13   that same misrepresentation could not have affected the grand jury in this case.

14        The two cases are the same in every relevant respect: same prosecutor,

15   same charges, same factual and legal issues.  It is likely, indeed, that the same

16   grand jury handed up both indictments.  Thus, there is every reason to believe

17   that Ms. French made the same false claim about the illegality of the conduct

18   charged in seeking the indictment in this case.

19        It cannot be, and was not in Sou, disputed by the Government that the

20   prosecutor's misstatement of the law—telling the grand jury that the core

21   predicate conduct underlying every charge in the indictment was illegal, when

22   in fact it was completely legal—substantially influenced the grand jury's decision

23   to indict.

24   **IV.   Defendant Will Likely Be Entitled to Dismissal of the**

25   **      Indictment if the Allegations Are Proven**

26        Finally, it is likely that Defendant will have a meritorious dismissal claim

27   if the allegations are borne out by the transcripts.  The proceedings in the Sou

28   case are highly probative on this point. The Sou case was, like this case, an

1  expensive, long-term investigation, led and tried by an experienced trial team

2  from Main Justice, and publicized by the Department itself. See

3  www.justice.gov/opa/pr/2010/January/10-crt-037.html (DOJ press release on Sou

4  case). Yet the day after Ms. French's conduct was exposed by this Court, the

5  Government moved for dismissal. The Government may argue that the

6  disclosure of Ms. French's conduct in the grand jury was not the basis for its

7  dismissal motion, but the timing makes the inference of a causal relationship

8  unavoidable; any suggestion that they were unrelated would be implausible on

9  its face, and if the Government has some other explanation, it certainly has not

10  articulated it.

11      It is virtually self-evident that telling a grand jury that legal conduct is

12  illegal and then asking for an indictment based on that conduct would

13  substantially influence the grand jury's decision to indict. This case is thus

14  sharply distinguishable from cases in which the alleged misinformation was

15  deemed not central to the indictment, e.g., *United States v. Vallejo*, 297 F.3d

16  1154, 1165 (11th Cir. 2002) ("Appellants' contention that the prosecutor misled

17  the grand jury about whether Carmona had any interest in Bell Bottoms or the

18  liquor license is immaterial. Whether Carmona had an interest in the club and

19  the license, has no bearing on whether he extorted the owners into giving up

20  their interests in the club.").

21      By contrast, this case falls into the narrow class of cases in which dismissal

22  is indeed an appropriate remedy. See, e.g., *United States v. Brito*, 907 F.2d 392,

23  394 (2d Cir. 1990) (holding that courts "may dismiss an indictment for

24  prosecutorial misconduct if the grand jury was misled or misinformed," if the

25  misinformation likely affected the decision to indict); *United States v Hogan*, 712

26  F2d 757, 762 (2d Cir. 1983) (ordering dismissal of indictment where prosecutor

27  alleged that defendant had committed various additional uncharged crimes and

28  was predisposed to deal drugs because "[w]hile the factual misstatements in the

1    agents' testimony may have been inadvertent, as the government now argues,

2    the fact remains that the appellants were prejudiced by the misstatements of

3    important facts...." ).

4        Defendant alleges that in this case, as in *Hogan*, the prosecutor made a

5    direct, false, allegation of additional, related criminal conduct that was central

6    to the theory of the offense presented in the indictment. The indictment charged

7    Defendant with orchestrating a criminal conspiracy to enrich himself through

8    recruitment fees charged to H2A workers. The prosecutor told the grand jury,

9    falsely, that collecting those fees was a crime, just as it later argued to this Court

10   in the Sou case that it was a crime. It simply defies common sense to argue that

11   the grand jury's determination of whether to indict was not substantially

12   influenced by the prosecutor's advisement to the grand jury that the collection

13   of such fees was illegal. Accordingly, the *Bank of Nova Scotia* standard would

14   be fully satisfied. Defendant anticipates that upon disclosure of the transcript,

15   the same result will be required: dismissal of this indictment.

16   **V.   Conclusion**

17       This is, in short, one of the rare situations in which Rule 6(e) contemplates

18   disclosure, because "grounds may exist for a motion to dismiss the indictment

19   because of matters occurring before the grand jury." Rule 6(e)(3)(C)(ii).

20   Dated:    October 20, 2011

21       Respectfully submitted,

22

23       /S/ William J. Kopeny

24       WILLIAM J. KOPENY
     Counsel for Defendant

25       MORDECHAI ORIAN

26

27

28